Docket No. 107755.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* MARRIAGE OF MARY JACQUELINE ABRELL, Appellant,
and JOHN GEORGE ABRELL, Appellee.

*Opinion filed February 4, 2010.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman and Karmeier concurred in the judgment and opinion.

Justice Garman dissented, with opinion, joined by Justices Kilbride and Burke.

## OPINION

At issue in this case is whether unused vacation days and sick days are marital property subject to distribution in an action for dissolution of marriage. The circuit court of Sangamon County held that those days were marital property. The appellate court affirmed in part and reversed in part. 386 Ill. App. 3d 718. We now affirm the appellate court's decision.

## BACKGROUND

John Abrell and Mary Jacqueline (Jacquie) Abrell were married on June 2, 1984. John and Jacquie had one child, John Matthew (Matthew) Abrell, born on August 26, 1986. On March 10, 2003, Jacquie filed a petition for dissolution of marriage. Trial of the outstanding issues in the dissolution action began in August 2004.

Jacquie testified at trial that she was 59 years old. She had a high school education and was a graduate of beauty school. When Jacquie and John got married, Jacquie was working as an executive secretary at the Springfield recreation department, earning approximately $14,000 a year. Jacquie left this job in April 1987, approximately nine months after Matthew was born. For the rest of the marriage, Jacquie did not have a full-time job, although she held intermittent part-time jobs.

John, who was 54 years old at the time of trial, testified that he began working as an attorney for the Illinois Department of Public Health in August 1984, where he continued to work. At the time of trial, John earned approximately $72,000 a year, and had accrued 115 sick days and 42 vacation days through his employment. John testified that he had surgery for prostate cancer on January 22, 2004, and had used quite a few of his sick days in connection with that surgery.

Jacquie testified at trial that her only income came from child support and her temporary maintenance payments. Jacquie's monthly expenses were $2,925.86, which included a mortgage payment of $610 a month, and an anticipated payment of $407 a month for insurance under COBRA that she expected to pay once the dissolution was final. Jacquie testified that she had applied for a significant number of jobs, but could not find one. Jacquie said that she had health problems, including bursitis in the knees and hips, high blood pressure, osteoporosis, histoplasmosis, anxiety, depression, mitral valve prolapse, psoriasis, asthma, and emphysema. She also had undergone an operation on her feet in April 2004.

The trial court issued a memorandum opinion on February 1, 2005. Child support was set in an agreed amount, to terminate on May 31, 2005, when Matthew, who was 18 years old, graduated from high school. Maintenance in the amount of $1,000 a month was

ordered, effective January 1, 2005, until June 1, 2005, at which time it would increase to $1,500 a month. The trial court found that this was an appropriate case for permanent maintenance, subject to review upon the request of either party. The trial court stated that although it did not find Jacquie to be unemployable, it did find that her age, education, and health were factors that might limit the employment options available to her. The trial court also awarded John 45 sick days without those days being subject to division as marital property, but held that the remainder of the sick days and vacation days were marital property and that their value was part of the marital estate. The vacation days were valued at $12,225.40, and the 69 remaining sick days were valued at $9,585.48, for a total of $21,819.88. This amount was incorporated into the marital property distribution and was given to John in the judgment of dissolution. The judgment for dissolution was entered on March 29, 2005.

On April 27, 2005, John filed a motion for reconsideration alleging that Jacquie had obtained employment at Horace Mann Insurance Company between the date that the trial court issued its memorandum opinion and the date judgment was entered. John asked the trial court to reconsider its decision concerning maintenance and to lower his maintenance payments. John also argued that there was no precedent in Illinois supporting a finding that accumulated sick and vacation days were marital property subject to distribution in a dissolution of marriage proceeding. In the alternative, John argued that the trial court should have considered the income tax implication of the award of vacation and sick days. In addition, John argued that the trial court overvalued the number of days available to him because there were limits on the number of days he could be compensated for at the time of retirement, and because some days were accumulated prior to the marriage.

The trial court issued its supplemental memorandum opinion on June 28, 2005. The trial court noted that the authorities were divided on the issue of vacation and sick days. The trial court held that:

> "There is no doubt in the Court's mind that the sick and vacation days accumulated during the marriage are marital property. One of the problems with the reserved jurisdiction approach is that John could use all of the vacation days before retirement and owe Jacquie nothing. The sick days would be

subject to more scrutiny but he could use them all up in small increments without much trouble. If John were to get sick he would most likely spend some of the money from that portion of the marital estate awarded him. The Court does not place much credence on the future necessary use of sick days because the Court is dealing with the present in its division of assets. They are definitely an asset at present although subject to some contingencies."

The trial court then held that the sick days and vacation days should be valued using John's present pay scale, and that the value should be reduced by the amount of taxes applicable to those days.

A hearing on the issue of maintenance was held on February 27, 2006. Jacquie testified that she started a job at Horace Mann on February 14, 2005. Jacquie left that job on September 23, 2005, to take a job at Southern Illinois University School of Medicine. Jacquie's starting salary at Southern Illinois University was $16,608 per year. At this job, Jacquie received vacation benefits, earned "comp" time, and became a part of the State University Retirement System. In addition, Jacquie had life insurance for herself and Matthew, and paid $116 a month for medical and dental insurance for herself and Matthew. The trial court denied John's motion for reconsideration as it pertained to maintenance, noting that Jacquie obtained her employment after the proofs had closed at trial. However, the trial court allowed the parties to proceed as though John's motion was a motion to modify maintenance.

On February 27, 2006, the trial court entered an order finding that Jacquie's employment constituted a substantial change in circumstances, and allowed John's motion for modification. The trial court reduced the amount of permanent maintenance to $1,250 per month, effective March 1, 2006.

On August 21, 2006, the trial court entered an order stating that the marital portion of the sick days was $9,724.75, and the marital portion of the vacation days was $12,225.40, for a total of $21,950.15. Taking into account the appropriate state and federal tax rates, the net value of the sick days was $7,001.82, and the net value of the vacation days was $8,802.29, for a total net value of $15,804.11. Jacquie was awarded marital property totaling $68,959.38, and John was awarded marital property totaling

$65,124.85. John's portion of the marital estate included an award of $15,804.11 for his vacation and sick days.

John filed an appeal, arguing that the trial court erred in failing to make the reduction in maintenance retroactive to the date of the judgment, and erred in failing to reduce the maintenance award further. John also argued that the trial court erred in considering John's accumulated sick and vacation days to be marital property.

The appellate court affirmed the trial court's ruling with regard to maintenance. 386 Ill. App. 3d 718. That issue is not before this court. However, the appellate court, with one justice specially concurring in part and dissenting in part, reversed the trial court's finding that the accumulated vacation and sick days were marital property. The appellate court held that the trial court erred in treating those days as marital property, assigning a value to them, and including them in the marital estate. 386 Ill. App. 3d at 731. The appellate court therefore reversed the trial court's property distribution and remanded so that the trial court could, without the need for further evidence, make an appropriate adjustment in the distribution of property. 386 Ill. App. 3d at 734.

Justice Myerscough dissented in part, stating that although she concurred with the majority with regard to the maintenance issue, she believed that the trial court's finding that the sick and vacation days were marital property was not erroneous, and that the trial court's distribution of that marital property was not against the manifest weight of the evidence. 386 Ill. App. 3d at 734-35 (Myerscough, J., specially concurring in part and dissenting in part). We subsequently allowed Jacquie's petition for leave to appeal. 210 Ill. 2d R. 315(a).


ANALYSIS

The issue of whether accumulated vacation and sick days are marital or nonmarital property is an issue of first impression in this court. The parties agree that this issue presents an issue of law, as the facts are not in dispute, and the credibility of witnesses is not an issue. Therefore, our review is *de novo. In re Marriage of Crook*, 211 Ill. 2d 437, 442 (2004).

On appeal, Jacquie argues that the appellate court erred in finding that John's accrued vacation and sick days were not marital property

subject to distribution. Jacquie claims that those days are property under both traditional definitions of property and under the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/101 *et seq.* (West 2004)). Jacquie also argues that the appellate court's decision reverses 20 years of practice in this state of treating accrued vacation and sick days as marital property.

We first address Jacquie's claim that the appellate court's decision reverses 20 years of practice of treating accrued vacation and sick days as marital property. In support of this claim, Jacquie points to the appellate court's decision in *In re Marriage of Zummo*, 167 Ill. App. 3d 566 (1988).

In *Zummo*, the appellate court set forth the details of the trial court's judgment of dissolution of marriage. In the judgment of dissolution, the husband was given "all the value of [his] sick days." *Zummo*, 167 Ill. App. 3d at 571. The husband had accrued 90 sick days, and would be compensated for each day at a rate of five-twelfths of his hourly rate if he retired or left his employment. *Zummo*, 167 Ill. App. 3d at 571. Although the appellate court in *Zummo* noted that the husband had been awarded the value of his sick days in the judgment of dissolution, the issue of whether those days were marital property was not raised or considered on appeal.

Jacquie acknowledges that *Zummo* did not address the issue of whether the husband's sick days were marital property, but claims that the reference to the award of sick days in the opinion has led to a 20-year practice in the courts of treating those days as marital property. As John observes, however, Jacquie offers no support for this claim. The parties agree that the instant case is the first case in Illinois to address this issue. Accordingly, there is no merit to Jacquie's claim that the appellate court's decision in this case reverses a 20-year practice in the courts of treating accrued vacation and sick days as marital property subject to distribution.

We next consider whether the appellate court properly found that the accrued sick and vacation days in this case were not property, but rather were a substitute for wages when, and if, the employee is unable to perform his duties. As indicated, Jacquie argues that those days are property under both the dictionary definition of property and under the Act.

Black's Law Dictionary defines "property" as:

> "1. The right to possess, use, and enjoy a determinate thing (either a tract of land or a chattel); the right of ownership ***. 2. Any external thing over which the rights of possession, use, and enjoyment are exercised ***." Black's Law Dictionary 1335-36 (9th ed. 2009).

Section 503(a) of the Act defines "marital property" as "all property acquired by either spouse subsequent to the marriage," except for certain enumerated exceptions. 750 ILCS 5/503(a) (West 2004).

Jacquie argues that the accrued vacation and sick days in this case were property because John had the right to use those days, and the days had value, as evinced by the fact that the trial court was able to put a value on those days. Further, those days are marital property because they were acquired by John during the marriage. Moreover, those days do not fit within any of the enumerated exceptions to marital property set forth in section 503(a). Jacquie therefore contends that the appellate court improperly held that the accrued days were not property but were nonmarital alternative wages.

As the appellate court noted, other jurisdictions are split on the issue of whether vacation and sick days are marital property. Those courts have held that: (1) accrued vacation and sick days are marital property subject to division at the time of dissolution; (2) accrued vacation and sick days are marital property but are subject to distribution when received, not at the time of dissolution; and (3) accrued vacation and sick days are not marital property.

The first published decision to address the issue found that a husband's unused personal leave was a marital asset for purposes of the trial court's division of property in a dissolution action. *Schober v. Schober*, 692 P.2d 267 (Alaska 1984). The Alaska Supreme Court found that the husband's right to the unused leave was similar to pension or retirement benefits, and was another form of deferred compensation. *Schober*, 692 P.2d at 268. The *Schober* court held that the husband's "interest in his unused leave was 'not an expectancy but a chose in action, a form of property.' " *Schober*, 692 P.2d at 268, quoting *In re Marriage of Brown*, 15 Cal. 3d 838, 845, 544 P.2d 561, 565, 126 Cal. Rptr. 633, 637 (1976). The *Schober* court therefore held that:

"As Mr. Schober's leave was earned, there was a decision to use it or leave it to be used for the mutual benefit of the parties later in their marriage. We think it clear that the unused leave was, therefore, a marital asset, which should have been considered by the trial court in its division of the Schober's property." *Schober*, 692 P.2d at 268.

This position was adopted by other courts following the *Schober* decision. For example, the Michigan Court of Appeals held that banked leave days, for which the husband could be compensated upon retirement, were a marital asset. *Lesko v. Lesko*, 184 Mich. App. 395, 457 N.W.2d 695 (1990), *overruled on other grounds by Booth v. Booth*, 194 Mich. App. 284, 486 N.W.2d 116 (1992). The *Lesko* court reasoned that:

"On the one hand, plaintiff may become ill and not retain his sick days until retirement. On the other hand, he has accumulated these sick days and vacation days during the marriage, he has a right to the use or pay for these days and they are capable of being assigned a value. In balancing all of the factors, we find that such banked leave days are a divisible marital asset. However, the tax consequences should be taken into consideration in making the determination of value." *Lesko*, 184 Mich. App. at 402, 457 N.W.2d at 699.

In addition, the Washington Court of Appeals and the Florida District Court of Appeals have held that accumulated vacation and/or sick pay is marital property. See *In re Marriage of Williams*, 84 Wash. App. 263, 927 P.2d 679 (1996) (trial court did not err in including husband's vested vacation and sick leave pay in the community's assets, finding vacation pay is a form of deferred earning and sick leave is a vested and matured benefit); *King v. King*, 719 So. 2d 920 (Fla. App. 1998) (trial court erred in failing to award wife any portion of husband's accumulated sick leave in final dissolution judgment); see also *In re Marriage of Nuss*, 65 Wash. App. 334, 828 P.2d 627 (1992) (wife's Financial Security Plan, which allowed her to bank unused sick leave and receive the dollar value of any unused benefits upon death or retirement, was properly characterized as an asset for distribution in dissolution of marriage action).

Similarly, where a party received payment for accumulated sick and/or vacation days following separation but prior to dissolution, courts have held that the payment for those days is marital property. See *Brotman v. Brotman*, 528 So. 2d 550 (Fla. App. 1988) (where husband had received severance pay and "earned vacation" pay upon termination of employment, after separation but prior to dissolution, court held that severance pay and "earned vacation" pay were marital assets and should have been considered in distribution of marital property); *Ryan v. Ryan*, 261 N.J. Super. 689, 619 A.2d 692 (1992) (court held that husband's receipt of payment for unused accumulated vacation days at time of separation was marital property because large percentage of those days were accrued during the marriage and were the result of the marital enterprise).

As noted, other jurisdictions have found that accumulated vacation and sick pay is marital property, but have held that the asset is subject to distribution at the time the pay is received, not at the time of dissolution. Thus, in *Grund v. Grund*, 151 Misc. 2d 852, 573 N.Y.S.2d 840 (1991), the Supreme Court, Suffolk County, New York, held that the husband's "SCATT" benefits, which included unused sick time and unused vacation time, were a marital asset. However, the court declined to award the wife a lump-sum distributive award relating to those benefits, noting that the husband could suffer a catastrophic illness and use up all accumulated sick and vacation time, or the husband's employer could eliminate the SCATT benefits prior to the husband's retirement. *Grund*, 151 Misc. 2d at 857, 573 N.Y.S.2d at 844. Therefore, the court awarded the wife one-fourth of the husband's unused sick, vacation and personal leave pay acquired during the parties' marriage, up until the commencement of the dissolution action, but made the award contingent, so that the wife would receive nothing if no benefits remained at the time the husband retired. *Grund*, 151 Misc. 2d at 857, 573 N.Y.S.2d at 844.

Similarly, in *Arnold v. Arnold*, 2003–NMCA–114, 134 N.M. 381, 77 P.3d 285, the New Mexico court of appeals held that the wife in a dissolution of marriage action was entitled to $13,304.40, representing half the value of her husband's accumulated vacation and sick leave as of the date of the final hearing on the dissolution. The *Arnold* court held that the husband's contractual benefit of accumulated vacation and sick leave that was earned during marriage

required the same treatment as any other retirement, pension or unvested stock options earned during marriage "as a result of the expenditure of community labor." *Arnold*, 2003–NMCA–114, ¶17, 134 N.M. 381, 77 P.3d 285. The court reasoned that:

> "The essence of leave is that it is a benefit of employment and, whether considered a benefit in addition to salary, or somehow an aspect of salary, it has independent value. If taken during marriage, leave time devoted to vacation or to recovery from illness benefits the community. If not taken, leave that accumulates will be available to benefit the community in the future. If the community ends, the accumulated leave attaches to the employee. Unless some equitable distribution is made or the asset is divided upon dissolution of marriage, the employee takes the full community asset and benefit. We see no policy reason or persuasive rationale why the employee, Husband in the case before us, should end up with the full value of the community asset or why the leave assets should not be divided." *Arnold*, 2003–NMCA–114, ¶16, 134 N.M. 381, 77 P.3d 285.

However, the *Arnold* court held that payment of the wife's half of the accrued vacation and sick leave would be delayed until the husband terminated his employment or reached age 62, whichever occurred first. *Arnold*, 2003–NMCA–114, ¶2, 134 N.M. 381, 77 P.3d 285. *Arnold*, however, did not appear to make payment for the accumulated vacation and sick days contingent on whether those days remained at the time of distribution.

Jacquie argues that the cases finding that accumulated vacation and sick days are marital property subject to distribution at the time of dissolution are the better reasoned decisions. She contends that the problem with the reserved jurisdiction approach taken by the *Grund* court is that a party has an incentive to use all his or her sick and vacation days prior to termination or retirement so that there are no days left for distribution at termination or retirement. Jacquie claims that accumulated vacation and sick days are similar to retirement and deferred compensation. Jacquie notes that retirement and deferred compensation are assets accrued during employment, but not usable until certain events occur in the future. Similarly, accumulated vacation days and sick days are accrued during employment, but are

not usable until certain events occur in the future. Consequently, those days are marital property subject to distribution under the Act.

In response, John notes that the cases relied upon by Jacquie were considered and rejected by the appellate court. John argues that the appellate court correctly found that decisions holding that accumulated vacation and sick days are not marital property are more persuasive.

The first published decision to find that accumulated vacation days were not marital property is *Thomasian v. Thomasian*, 79 Md. App. 188, 556 A.2d 675 (1989). In that case, the husband had accrued more than 180 hours of vacation time and more than 180 hours of holiday time, which had a total value of more than $12,000. The *Thomasian* court noted that nonvested, noncontributory pension plans, stock option plans, and workers' compensation awards compensating a party for loss of any earning capacity during marriage, had all been found to be marital property. *Thomasian*, 79 Md. App. at 197, 556 A.2d at 679. The *Thomasian* court acknowledged that the *Schober* court had addressed this precise issue, and had held that unused leave was a form of deferred compensation, like a pension or retirement benefit, and therefore was a form of property. *Thomasian*, 79 Md. App. at 199, 556 A.2d at 680. The *Thomasian* court recognized the similarities between accumulated vacation and holiday pay and pension interests, stock option plans and workers' compensation awards. However, the court was not persuaded that the same rationale applied to vacation and holiday pay and was not persuaded by the analysis of the *Schober* court. *Thomasian*, 79 Md. App. at 199-200, 556 A.2d at 680. The *Thomasian* court held:

> "Nor are we satisfied that simply because the definition of property in our Act is expansive enough to encompass accrued holiday and vacation entitlement, it necessarily does. We just are not persuaded that accrued holiday and vacation entitlement is the same as a pension or retirement benefits, a form of deferred compensation; since it replaces wages on days when the worker does not work, it is really only an alternative form of wages. [Citation.] It need not be liquidated by the payment of cash; it may be, and often is, dissipated when the person entitled to do so, takes vacation or holiday

time. Thus, it is far from tangible as, and much more difficult to value, not to mention more personal than, a pension or retirement benefits. Accordingly, we hold that accrued holiday and vacation entitlement is not marital property. It follows that the court did not err in refusing to consider it in determining whether to grant a monetary award." *Thomasian*, 79 Md. App. at 200, 556 A.2d at 680-81.

The court of appeals of Kentucky adopted the approach of the *Thomasian* court in finding that a wife's accrued vacation time was not a marital asset. *Bratcher v. Bratcher*, 26 S.W.3d 797 (Ky. App. 2000). The wife had accumulated approximately $2,800 in vacation leave. *Bratcher*, 26 S.W.3d at 798-99. If the wife terminated her employment, she would be paid for any unused vacation time. *Bratcher*, 26 S.W.3d at 799. The *Bratcher* court acknowledged decisions expressing a view contrary to *Thomasian*, but found the decision in *Thomasian* to be more persuasive. *Bratcher*, 26 S.W.3d at 800.

The court of appeals of Indiana also held that a husband's accumulated sick days were not a martial asset for purposes of property distribution in a dissolution of marriage case. *Akers v. Akers*, 729 N.E.2d 1029 (Ind. App. 2000). In *Akers*, the husband had accumulated more than 200 unused sick days at the time of dissolution. *Akers*, 729 N.E.2d at 1032. The husband's teaching contract contained a retirement benefit clause providing for payment for a maximum of 187 of those days upon retirement. *Akers*, 729 N.E.2d at 1032. The *Akers* court noted, however, that it could "discern no evidence, nor does Wife point us to any, that Husband had a *present* right to be paid for his sick days other than by becoming ill." (Emphasis in original.) *Akers*, 729 N.E.2d at 1032. The court observed that:

> "Husband testified that the terms of his teaching contract, including those governing retirement benefits, were subject to renegotiation and that he could not foresee what contract provisions would be in effect at the time of his retirement. Indeed, it was mere speculation for the trial court to assume that Husband would not suffer any illness and would retain at least 187 unused sick days at their current value until retirement. While he certainly accumulated these sick days

-12-

during his marriage to Wife, the accumulation of sick days had only a future value that was indeterminate and speculative at best." *Akers*, 729 N.E.2d at 1032.

*Akers* concluded that the "Husband's accumulation of unused sick days had no present value, was 'contingent and speculative in nature,' and thus, not capable of division as a marital asset." *Akers*, 729 N.E.2d at 1033, quoting *Mullins v. Matlock*, 638 N.E.2d 854, 856 (Ind. App. 1994). The court noted, however, that it might have reached a different result if the husband possessed a vested interest in the unused sick days at the time of the dissolution, such as a present right to convert those days to cash. *Akers*, 729 N.E.2d at 1033 n.5.

After reviewing the preceding authorities and the arguments of the parties, the appellate court in this case held that John's accumulated vacation and sick days were not property, and thus were not marital property, but rather were a substitute for wages when, and if, the employee is unable to perform his duties. 386 Ill. App. 3d at 730. The appellate court explained:

"The days in this case were a benefit to the intact marital estate because they provided a safety net. They continue to be a benefit and a safeguard to both Jacquie and John. It is true they will have a cash value if they remain unused when the employee retires. It may be possible to calculate the present cash value for the days assuming they remain unused when John retires. But the question is not whether it would be possible to calculate their value–the question is whether such accumulated days are property and thus marital property under the statutory definition.

Sick days and vacation days are alternative wages meant to be paid when the wage earner is unable to work or decides to take a vacation. In the case of a married couple, the wage earner who is ill or who vacations still contributes wages to the marital estate via this alternative. This is a job benefit with value because it helps protect the marital estate. When a marriage is dissolved, a wage earner who is ill or vacations is still able to pay child support, maintenance, educational expenses for children, and remaining marital debt because he or she has employment that provides sick and vacation days. John cannot assign or transfer his sick or vacation days to

-13-

another person. He cannot realize any cash benefit from them today other than by resigning or retiring from his employment. Accumulated sick-leave and vacation days are not marital property." 386 Ill. App. 3d at 730-31.

We agree with the appellate court's analysis in this case and find the reasoning of the *Thomasian* and *Akers* courts persuasive. The decisions to the contrary found it significant that a trial court was able to assign a value to a party's accrued vacation and sick days. We do not agree that this factor compels a finding that John's accrued vacation and sick days are marital property. Although the trial court was able to put a value on those days in its judgment for dissolution, we find that the value assigned to those days was speculative at best. We also find that the reserved jurisdiction approach used by the *Grund* court could be unnecessarily complicated and difficult to administer, particularly if the parties are many years from retirement.

As the appellate court noted, John had no present right to be paid for his sick and vacation days absent retirement or termination of his employment. Further, while John had accrued 115 sick days and 42 vacation days at the time of trial, those days may or may not remain at the time John retires or terminates his employment. If John uses any of the sick or vacation days awarded to him prior to retirement or termination of his employment, John will never collect payment for those days. In that case, the award of the value of those days to John in the property distribution would be illusory. As John has argued, if this court reinstates the trial court's finding that the accumulated vacation and sick days are marital property, John's share of the marital estate will be diminished every time he uses a sick day or vacation day before his retirement or termination, while Jacquie's cash payout will remain the same. Consequently, we find that although John accumulated his vacation and sick days during his marriage to Jacquie, the accumulation of those days had only a future value that was indeterminate and speculative. For that reason, we find that the accrued vacation and sick days differ from pension plans, stock options and deferred compensation.

At oral argument, Jacquie analogized the facts of this case to a situation where a party is self-employed, and during the marriage puts money into an account to provide funds for any work days missed due to sickness or vacation. Jacquie argues that under her scenario, upon

-14-

dissolution, the money put aside for vacation and sick days would qualify as marital property. Jacquie states that there should be no difference between money put aside by a self-employed party in anticipation of a vacation or sickness, and the value of vacation and sick days accrued by an employee pursuant to his employment.

We disagree with Jacquie that there is no difference between money put aside by a party in anticipation of a vacation or sickness and accrued vacation and sick days. Under Jacquie's scenario, a party is simply taking money that is marital property and putting it into a specific account. The fact that the parties designate that account as providing funds for vacations or sick days does not prevent the parties from using that money for other things. That money is tangible and certain, and would be subject to division at dissolution without regard to the parties' characterization of the account holding the funds.

In contrast, the value of accrued vacation and sick days is speculative and uncertain until a party actually collects compensation for those days at retirement or termination of his employment. A party cannot receive cash for those days prior to retirement or termination. In fact, it is possible that in some cases, an employer might change its policy concerning the right to receive compensation for accrued sick days, limiting or eliminating that right entirely. Similarly, in cases where provided for in a collective-bargaining agreement, an employer might change its policy concerning the right to receive compensation for accrued vacation days. See 820 ILCS 115/5 (West 2008). Accordingly, we find that accrued vacation and sick days are not marital property subject to distribution in a dissolution of marriage action.

In so holding, we note that the facts of this case differ from the facts in *Brotman v. Brotman*, 528 So. 2d 550 (Fla. 1988), and *Ryan v. Ryan*, 261 N.J. Super. 689, 619 A.2d 692 (1992). In those cases, the husbands received payment for accrued vacation days following separation but prior to dissolution of marriage. We agree that when a party has actually received payment for vacation and/or sick days accrued during marriage prior to a judgment for dissolution, the payment for those days is marital property subject to distribution in the marital estate. Under that scenario, the vacation and/or sick days have been converted to cash, the value of which is definite and

certain. In this case, however, the accrued days have not been converted to cash, and the value of those days remains uncertain.

Finally, we address the appellate court's order remanding this cause to the trial court "so the trial court, without the need for further evidence, can make an appropriate adjustment in the distribution of property." 386 Ill. App. 3d at 734. Jacquie argues that this order could be read to preclude adjustment of the property division or maintenance in light of the award of all the accrued vacation and sick days to John as nonmarital property. Jacquie contends that section 503(d) of the Act requires the trial court to divide marital property "in just proportions considering all relevant factors" including "the value of the property assigned to each spouse." 750 ILCS 5/503(d)(3) (West 2004). Jacquie states that the appellate court's order does not allow the trial court to adjust the property division or maintenance in light of the new distribution upon remand, in violation of section 503(d) of the Act.

We disagree with Jacquie's reading of the appellate court's directions upon remand. The appellate court directed the trial court to make an appropriate adjustment to the property distribution in light of its decision reversing the distribution of property that included the accrued vacation and sick days as marital property. These directions do not prevent the trial court from making an adjustment to the distribution of property pursuant to section 503(d) of the Act. The appellate court's order simply states that the trial court does not need further evidence to make that adjustment. We agree that no further evidence is needed to in order to adjust the property distribution. We therefore affirm the appellate court's directions to the trial court on remand.

CONCLUSION

For all of the foregoing reasons, we affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*

JUSTICE GARMAN, dissenting:

-16-

When presented with a dispute between divorcing spouses over an item of property, the court must answer four questions. First, is the item in dispute actually property? Second, if it is property, is it marital property? Third, if it is marital property, what is its value? And, finally, how should the property be distributed?

In the present case, the circuit court found that the husband's accrued sick and vacation days are property and that, because the days were earned during the marriage, they are marital property subject to division upon dissolution. The circuit court valued the days at the husband's current salary, after taxes, and distributed the value of this asset disproportionately to the husband, apparently in recognition of the husband's recent health problems.

The appellate court held that accrued sick and vacation days are not property at all and, thus, found no need to categorize the value of the accrued days as marital or nonmarital property, to assign a value to them, or to include them in the division of marital property. 386 Ill. App. 3d at 730.

Although the majority agrees with the appellate court's analysis in general, the majority opinion does not expressly state whether such accrued days are or are not property. Rather, the majority concludes that, whatever these days are, their value is not divisible upon dissolution. The majority is concerned that the value assigned to such days is "speculative at best." The majority also concludes that if these days were to be divided as an asset of the marital estate and if the employee spouse were to use any of his vacation or sick time in the future, he would "never collect payment for those days." Slip op. at 14.

In my opinion, accrued sick and vacation days can be property. In the present case, the husband's accrued days are property and, because the days were earned during the marriage, they are marital property. I also believe that the circuit court's method of valuation was reasonable and the circuit court's division was not an abuse of discretion. I, therefore, dissent.

Property or Nonproperty

The threshold question in this case is whether accrued sick and vacation days are property. As the majority notes, this is a question of law. Slip op. at 5.

I agree with Justice Myerscough, who pointed out in her separate opinion that an employee's sick days and vacation days "can, but may not always, be marital property." 386 Ill. App. 3d at 734 (Myerscough, J., concurring in part and dissenting in part). Whether such accrued days are property depends on whether the employee spouse has a vested right to receive payment for them.

The wife relies, in part, on the dictionary definition of "property." Slip op. at 7. Following the quoted dictionary definition, the law dictionary offers the following quotation as an illustration:

> " 'In its widest sense, property includes all a person's legal rights, of whatever description. A man's property is all that is *his in law*. \*\*\* In a second and narrower sense, property includes not all a person's rights, but only his proprietary as opposed to his personal rights. \*\*\* [A] man's land, chattels, shares, and the debts due to him are his property \*\*\*.' " (Emphasis in original.) Black's Law Dictionary 1335-36 (9th ed. 2009), quoting J. Salmond, Jurisprudence 423-24 (10th ed. 1947).

In this second sense, sick or vacation days accrued by an employee are his property because they are, in effect, a debt due to him as part of the compensation he has earned for work he has already performed.

The law dictionary defines "compensation" as "[r]emuneration and other benefits received in return for services rendered; esp. salary or wages." Black's Law Dictionary 322 (9th ed. 2009). By way of example:

> " '*Compensation* consists of wages and benefits in return for services. It is payment for work. \*\*\* [Compensation] includes wages, stock option plans, profit-sharing, commissions, bonuses, golden parachutes, vacation, sick pay, medical benefits, disability, leaves of absence, and expense reimbursement.' " (Emphasis in original.) Black's Law Dictionary 322 (9th ed. 2009), quoting K. Decker & H. Felix,

-18-

Drafting and Revising Employment Contracts §3.17, at 68 (1991).

Further, "deferred compensation" is defined as "[p]ayment for work performed, to be paid in the future or when some future event occurs." Black's Law Dictionary 322 (9th ed. 2009).

The most common type of deferred compensation is a pension. Other types of deferred compensation include commissions and bonuses earned but not yet paid, accounts receivable, "comp time" in lieu of overtime, and royalties to be paid in the future on work already performed. Each of these is a form of property and, if earned during a marriage, is marital property. See, *e.g.*, *In re Marriage of Schneider*, 214 Ill. 2d 152 (2005) (accounts receivable should be included in determining the value of a dental practice); *In re Marriage of Peters*, 326 Ill. App. 3d 364 (2001) (portion of husband's potential stock bonus earned during marriage was "marital property," regardless of its value, where the agreement with the employer was signed shortly after the parties married, husband was working toward the bonus during the marriage, and husband was halfway to the 10-year requirement and was averaging well over what he needed to earn the bonus); *In re Marriage of Heinze*, 257 Ill. App. 3d 782 (1994) (royalties generated in future by sale of book written by wife during the marriage are marital property subject to division); *In re Marriage of Tietz*, 238 Ill. App. 3d 965 (1992) (lawyer's accounts receivable have already been earned and have known value; they are "future income" only in the sense that they will be collected in the future); *In re Marriage of Feldman*, 199 Ill. App. 3d 1002 (1990) (accounts receivable of medical practice cannot be considered future income); *In re Marriage of Rubinstein*, 145 Ill. App. 3d 31 (1986) (accounts receivable in completed but unbilled services were asset of husband's medical practice).

Like these other forms of deferred compensation, the employee spouse who has accrued sick and vacation days has already earned the remuneration, but will not realize the benefit until he either uses the time for a permissible purpose or is paid the value of the accrued days upon termination of employment. As a result, this particular asset is not as liquid as other assets such as money in the bank or the contents of a stock portfolio, but this lack of liquidity does not mean that this asset is not property.

-19-

Under the Illinois Wage Payment and Collection Act (Wage Act) (820 ILCS 115/1 *et seq.* (West 2008)), an employee's right to payment for accrued vacation time is vested (with certain exceptions not applicable in the present case). That is, once the days are earned by the employee, the employer is obligated to either grant the employee vacation time with pay or pay the employee for the accrued days upon termination of employment. 820 ILCS 115/5 (West 2008). Thus, accrued vacation days are a form of property, in the same sense that other forms of deferred compensation are an employee's property.

The Wage Act does not contain a similar provision protecting the employee's right to receive payment for accrued sick days. However, depending on the facts of the particular case, accrued sick days may also constitute the employee's property. If the employee is entitled to payment for accrued sick days upon termination of employment, the sick days are, indeed, a form of deferred compensation. If, however, the employer's sick day policy is of the "use it or lose it" variety, it is not a form of property because the employee has no vested right to payment if he does not find it necessary to use the sick days for their intended purpose.

The majority's concerns about the difficulty in valuing sick and vacation days are not relevant at this stage of the analysis. Many forms of property are difficult to value, but this difficulty does not render them nonproperty. For example, courts are frequently called upon to determine the present value of a future stream of income, crops in the field, or some form of intangible property.

In the present case, the trial court correctly determined that the husband's accrued vacation and sick days are property because they are a form of deferred compensation that he has a vested right to receive either during his remaining years of employment or upon the termination of the employment relationship.


Marital or Nonmarital Property

If the answer to the first question is that the item in dispute is property, the second question is presented–whether the property is marital property. This is a question of fact, subject to review under

the manifest weight of the evidence standard. *In re Marriage of Smith*, 265 Ill. App. 3d 249, 252-53 (1994).

Section 503(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) defines "marital property" as "all property acquired by either spouse subsequent to the marriage," with certain exceptions not applicable in the present case. 750 ILCS 5/503(a) (West 2004).

The parties in the present case do not dispute that the husband accumulated 115 sick days and 42 vacation days during the marriage. Thus, the circuit court's finding that the husband's accrued sick and vacation days are marital property is not against the manifest weight of the evidence.

Valuation

Once this determination is made, the next step for the circuit court is to establish the value of the accrued days. *In re Marriage of Schneider*, 214 Ill. 2d 152 (2005) (circuit court must establish the value of the parties' assets in order to be able to divide the marital property in just proportions).

The circuit court in the present case assigned value based on the husband's present salary, after taxes. This is an entirely rational approach to valuation. If the husband were to retire or leave his job tomorrow, this is the value the days would have. Although his salary may rise in the future, making the days more valuable when he is eventually paid, the wife has not argued for a greater value.

Further, in other contexts, the circuit court is not concerned with the possibility that the value of an item of marital property may increase or decrease after it is awarded to one of the spouses. If one spouse is awarded a piece of artwork and the other is awarded a boat of equal value, it is immaterial that the piece of art may appreciate in value and the boat will depreciate. It is the value of the asset at the time of distribution that the circuit court must consider when dividing marital property. *In re Marriage of Weiler*, 258 Ill. App. 3d 454, 460-61 (1994).

The majority concludes that the value of the accrued days is speculative because it is "it is possible that in some cases, an employer might change its policy concerning the right to receive

compensation for accrued vacation and sick days." Slip op. at 15. This statement is incorrect as a matter of law, at least with respect to vacation days.

An Illinois employer is certainly free to change its policy regarding sick and vacation days going forward–awarding fewer days, capping the number of days that can be accrued, even eliminating sick or vacation days altogether. Most employers, however, are prohibited by law from cancelling or refusing to pay the employee for vacation days already earned.

Under section 5 of the Wage Act:

> "Unless otherwise provided in a collective bargaining agreement, whenever a contract of employment or employment policy provides for paid vacations, and an employee resigns or is terminated without having taken all vacation time earned in accordance with such contract of employment or employment policy, the monetary equivalent of all earned vacation shall be paid to him or her as part of his or her final compensation at his or her final rate of pay and *no employment contract or employment policy shall provide for forfeiture of earned vacation time upon separation.*" (Emphasis added.) 820 ILCS 115/5 (West 2008).

It is notable that the last clause was amended in 1984. Until that time, employers were permitted to have employment contracts or policies that provided for forfeiture of earned vacation time upon separation from employment. Thus, it violates the state and the public policy of the State of Illinois as expressed by the statute to treat earned vacation time as anything other than a property right of the employee. See, *e.g.*, *Prettyman v. Commonwealth Edison Co.*, 273 Ill. App. 3d 1090 (1995) (employer violates Wage Act by adopting policy providing that an employee loses unused vacation time upon separation). Thus, to the extent that the majority's position relies on out-of-state cases utilizing this rationale to avoid distributing this property, it is in error.

Valuation of sick days presents a slightly more difficult question because the employer is not prohibited by law from changing its sick day policy in a manner that results in the forfeiture of accrued sick days. However, in the absence of evidence that this was likely to

occur in this particular case, the circuit court properly valued the accrued sick days at the employee spouse's present salary, after taxes.

Thus, the circuit court's valuation of the sick and vacation days was not against the manifest weight of the evidence. *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 699-700 (2006) (circuit court's valuation of marital assets is reviewed under manifest weight of the evidence standard, while division of property between spouses is reviewed for abuse of discretion).

Distribution of Property Upon Dissolution

Section 503(d) of the Act requires the circuit court to divide the couple's marital property between them in "just proportions considering all relevant factors." 750 ILCS 5/503(d) (West 2004).

Ignoring the existence of a form of deferred compensation operates to the detriment of the nonemployee spouse and is inequitable. For example, a wife may work for an employer who provides a generous retirement plan, but who gives only 10 vacation days per year that she is not allowed to carry over to the next year. Her husband, in contrast, may earn five weeks of paid vacation per year, which he is allowed to accumulate to a total of 200 days, but his employer makes no contribution to his pension. Upon their divorce, her pension will be valued and included in the division of marital property. Under the majority's rule, the husband in this example would reap the entire benefit of his accrued vacation days, even though they were earned during the marriage. Equity requires that she share in this form of deferred compensation, just has he will share in her pension.

Once it is determined that sick and vacation days are marital property, they must be included in the division of marital property. The nonemployee spouse cannot be awarded any of the accrued days, as such, because the employee spouse is the only person entitled to utilize them. Thus, the nonemployee spouse must be awarded some other item of marital property to offset the award of the accrued days to the employee spouse.

Therefore, if the circuit court determines that a just division of marital property is a 50/50 split, the employee spouse should be awarded all accrued days and the nonemployee spouse should be

awarded some other asset of approximately equal value. If the circuit court determines that the just proportion is other than 50/50, the nonemployee spouse should be awarded other assets of somewhat greater or lesser value, as necessary to achieve the just division.

In the present case, the circuit court exercised its discretion to award the husband a greater share of this particular asset (45 sick days "off the top," plus half of the value of the remaining sick and vacation days), in consideration of his recent health problems. In my opinion, this is not an abuse of discretion.

However, the majority is also concerned that if the accrued days are included in the division of marital property and if the husband "uses any of the sick or vacation days awarded to him prior to retirement or termination of his employment, [he] will never collect payment for those days." Slip op. at 14.

This concern is misplaced. In the future, the husband's share of the marital estate will not be "diminished every time he uses a sick day or vacation day." Slip op. at 14. Rather, when he is paid for taking a sick day or a vacation day or when he receives a lump-sum payment upon termination of his employment, he will be paid in full by his employer, thereby getting the full benefit of the marital property awarded to him, just as if he were taking money out of the bank. Indeed, if his salary has risen in the interim, he will receive more than the amount the wife received for "her share" of these days in the division of property.

Finally, rather than asking whether the right to receive the days or payment of the their value is vested in the employee spouse at the time of dissolution, the majority would divide the days as a marital asset *only if* the payment is actually received by the employee spouse prior to the entry of judgment. Slip op. at 15. Of course, if the employee spouse has actually received payment for previously accrued sick and vacation days, there are no longer any sick or vacation days to talk about; there is just cash that was earned during the marriage and is obviously marital property. Under the majority's approach, if the employee spouse receives payment for these days one day before dissolution, it is marital property; if he receives payment one day after dissolution, it is not. This is inconsistent and illogical and not in keeping with the intent of the legislature as expressed in section 503 of the Act.

## Conclusion

The majority has adopted a one-size-fits-all rule to resolve an issue that deserves case-by-case consideration.

I conclude that under section 5 of the Wage Payment Act, vacation days are property and, if earned by a spouse during the marriage, are marital property subject to division upon divorce. Sick days are property if the employee spouse is entitled to receive payment for accrued days upon termination of employment. The circuit court's finding that the husband's accrued sick and vacation days are marital property was not against the manifest weight of the evidence and its division of marital property was not an abuse of discretion. I, therefore, would reverse the appellate court and affirm the circuit court's judgment.

JUSTICES KILBRIDE and BURKE join in this dissent.